## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JEFFREY ERIC SCHAEFER,**

    **Plaintiff,**               **CIVIL ACTION NO. 13-13669**

**vs.**                           **DISTRICT JUDGE STEPHEN J. MURPHY**

**M.J. MODELSKI**              **MAGISTRATE JUDGE MONA K. MAJZOUB**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff filed his *pro se* Complaint on August 27, 2013, alleging that Defendant violated his rights under the First and Fourteenth Amendments of the U.S. Constitution while acting in his capacity as an Administrative Law Judge for the Michigan Secretary of State's Office. (*See* docket no. 1.) Plaintiff, a "traditional Jewish person," alleges that Defendant discriminated against him on the basis of religion when Defendant asked him if he "had horns under his yarmulke" and asked him to recite The Lord's Prayer in the context of an administrative hearing. (*See id.*) Plaintiff seeks injunctive relief and monetary damages. (*See id.*; *see also* docket nos. 10 and 13.) On July 21, 2014, Plaintiff filed an Amended Complaint in which he asserts that Defendant committed perjury by lying to an investigator during an investigation by the Michigan Department of Civil Rights. (Docket no. 28.)

Before the Court is Defendant's Motion for Judgment on the Pleadings or for Summary

1

Judgment.[1]  (Docket no. 42.)  Plaintiff has not filed a Response.  All pretrial matters have been referred to the undersigned for consideration.  (Docket no. 5.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I.      Recommendation

For the reasons that follow, the undersigned recommends that Defendant's Motion for Judgment on the Pleadings or for Summary Judgment (docket no. 42) be granted.  Plaintiff's outstanding motions (docket nos. 29, 30, 35, and 37) and Defendant's Motion for Protective Order (docket no. 36) should be denied as moot.  This matter should be dismissed in its entirety.

## II.     Report

### A.      Procedural History

On September 11, 2013, Plaintiff mailed Defendant a summons and a copy of his Complaint by certified mail.  (*See* docket no. 7.)  On October 22, 2013, Plaintiff requested a clerk's entry of default and a default judgment.  (Docket nos. 7, 8, and 9.)  A Clerk's Entry of Default was entered against Defendant on October 22, 2013, but Plaintiff's request for Default Judgment was denied for failure to provide a sum certain.  (Docket nos. 9 and 12.)  On October 29, 2013, Plaintiff filed a Motion for Default Judgment against Defendant.  (Docket no. 13.)  He filed a supplemental brief on November 19, 2013 (docket no. 16), an Emergency Motion for Default Judgment on March 20, 2014

---

[1]Also pending before the Court are Plaintiff's Motion for Default Judgment (docket no. 29), Plaintiff's Motion for Sanctions (docket no. 30), Plaintiff's Second Motion for Default Judgment (docket no. 35), Plaintiff's Motion for Removal of Magistrate Mona K. Majzoub and Withdrawal of Defense Counsel Pursuant to Fed. R. Civ. P. 63 and 72 (docket no. 37), and Defendant's Motion for Protective Order (docket no. 36).  Because Defendant's Motion for Judgment on the Pleadings or for Summary Judgment should be granted, the Court should deny these motions as moot.

(docket no. 19), and a Supplement to his Motion on April 7, 2014 (docket no. 20).

As of May 5, 2014, Defendant had not filed an answer to Plaintiff's Complaint or to Plaintiff's Motion for Default Judgment. Thus, the undersigned ordered Defendant to show cause why he had failed to respond to Plaintiff's Complaint, noting that failure to respond to the Court's show-cause order may result in a judgment against Defendant. (Docket no. 21.) Defendant's attorney filed an appearance on May 14, 2014, and Defendant filed a Response to the Court's Order to Show Cause on March 23, 2014, asserting that Plaintiff's default should be set aside and that this matter should be dismissed because Plaintiff failed to properly serve Defendant. (Docket nos. 23 and 24.)

On July 21, 2014, the Court denied Plaintiff's Motions and granted him 30 days to properly serve Defendant. (Docket no. 27.) That same day, Plaintiff filed his Amended Complaint, another Motion for Default Judgment, and his Motion for Sanctions. (Docket nos. 28, 29, and 30.) Plaintiff requested a Summons on August 1, 2014, and it appears that he served Defendant because Defendant filed an Answer on August 11, 2014. (Docket no. 34.) Plaintiff filed his next Motion for Default Judgment three days later. (Docket no. 37.) Defendant then filed his Motion for Protective Order, in which he asserts that discovery in this matter should be stayed while he files a Motion for Summary Judgment. (Docket no. 36.) Defendant filed his Motion for Judgment on the Pleadings or for Summary Judgment on October 9, 2014. (Docket no. 42.)

### B.     Legal Standards

#### 1.     Motion for Judgment on the Pleadings

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) states that a party may move for judgment on the pleadings after the pleadings

are closed but early enough not to delay trial.  "Motions seeking judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), are reviewed under the same standard applied to motions to dismiss brought pursuant to Rule 12(b)(6)."  *Estate of Malloy v. PNC Bank*, No. 11–12922, 2012 WL 1094344, at *4 (E.D. Mich. Apr.2, 2012) (citation omitted).  A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (citation omitted).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (internal quotations and citations omitted).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

Additionally, when a Rule 12(c) motion presents matters outside the pleadings, the court must convert the motion to a motion for summary judgment under Rule 56 unless the district court

excludes such matters. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). But "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account'" without the necessity of converting the motion into one for summary judgment. *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## 2.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### C.     Analysis

#### 1.     Plaintiff's Perjury Claim

The legal basis for the claim alleged in Plaintiff's Amended Complaint is unclear, but it appears to be based, at least in part, on Section 37.08 of the Texas Penal Code, which he quotes in his Amended Complaint.  (*See* docket no 28 at 2.)  Confusingly, however, Plaintiff asserts that this language comes from "Sec. 3 of the United States Penal Code Title 8 Chapter 37."  (*Id.*)  Title 8 of the U.S. Code regulates "Aliens and Nationality," and it has no Chapter 37.  Sections 1621-1623 of Title 18 outline the federal laws with regard to perjury and false statements to federal agents and agencies.  18 U.S.C. §§ 1621-1632.  Additionally, Plaintiff cites to Mich. Comp. Laws Ann. 600.2911(2)(b), which sets forth the circumstances under which exemplary and punitive damages may be recovered in libel cases.  (*Id.* at 3.)

6

Regardless of whether Plaintiff intended to bring his perjury claim under Texas law, federal law, or Michigan law, his allegations give no rise to a private cause of action. *See generally*, *Schied v. Ward*, No. 09-12374, 2009 WL 5171839, at *5 (E.D. Mich. Dec. 22, 2009); *Meyer v. Hubbell*, 117 Mich. App. 699, 701 (1982); *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex.1998). Therefore, the Court should grant Defendant's Motion with regard to Plaintiff's perjury claim.

### 2.   Plaintiff's First and Fourteenth Amendment Claims

In his original Complaint, Plaintiff claims Defendant violated his right to procedural due process under the Fourteenth Amendment and discriminated against him on the basis of religion in violation of the First Amendment. (*See* docket no. 1.) Plaintiff also mentions the Americans with Disabilities Act in the opening paragraph of his Complaint, but he makes no related allegations therein. (*Id.* at 1.)

The Fourteenth Amendment protects against deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). Procedural due process claims apply to such deprivations that are "without due process of law." *Id.* The law requires that a plaintiff have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). To support such a claim, a plaintiff must show that (1) he has a life, liberty, or property interest protected by the Constitution; (2) he was deprived of that interest by a state actor; and (3) he was not afforded timely and adequate legal process. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir.2009) (citation omitted).

The First Amendment guarantees the free exercise of religion and allows for two types of claims: (1) retaliations claims, and (2) claims that a government defendant infringed on the

plaintiff's sincerely held beliefs.[2]  To establish an infringement claim under the First Amendment, a plaintiff must demonstrate that the defendant's conduct places a substantial burden on the plaintiff's sincerely held religious practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir.1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.2001); *Bakr v. Johnson*, No. 95–2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997).  A substantial burden exists "when [an] action force[s] an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963); *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18 (1981)).

Plaintiff's First and Fourteenth Amendment claims are inextricably intertwined.  Plaintiff asserts that Defendant made inappropriate comments about his yarmulke, required Plaintiff to say "The Lord's Prayer" during his hearing, and made comments about Plaintiff's genitalia to Plaintiff's mother following the hearing, all of which resulted in emotional distress, an unfair hearing, and an inappropriate denial of his request to have his driver's license reinstated.  (*See* docket no. 1.)  A review of the hearing transcript and Defendant's January 8, 2013 Order denying Plaintiff's appeal, however, undermines Plaintiff's contentions.

---

[2]To establish a claim of retaliation under the First Amendment, an plaintiff must show that (1) he was engaged in protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Although Defendant addresses Plaintiff's claims in this manner, Plaintiff makes no allegations that he was engaged in a protected activity or that any related adverse action was taken against him.  Instead, he asserts that Defendant treated him with prejudice simply because of his religion.  Therefore, Plaintiff's claims arise under an infringement theory, not a retaliation theory.

The hearing at issue in this matter was conducted on July 18, 2012, and was requested by Plaintiff for the purpose of appealing the Michigan Department of State's denial of his request to have his driver's license reinstated following various substance-abuse-related convictions. (*See* docket no. 42-2.)  At the hearing, Plaintiff was required to meet the following burden of proof:

> [The Petitioner must] present clear and convincing evidence that any substance abuse/dependency problem[s were] under control and likely to remain under control, that there [was] a low or minimal risk of repeating prior abusive behavior relative to alcohol and/or controlled substances, that there [was] a low or minimal risk of driving while impaired or intoxicated, and that Petitioner ha[d] maintained a period of abstinence consistent with [the applicable rule].

(*Id.*)  Defendant asked Plaintiff to provide attendance sheets for the A.A. program that he had allegedly attended, and when he was unable to do so, Defendant asked him to recite some of the twelve steps used in the program.  (*See* docket no. 42-5 at 34-36.)  And when he was unable to properly do so, Defendant asked him to recite the Serenity Prayer, which he noted was a non-denominational prayer said at A.A. meetings, but Plaintiff refused to do because he was Jewish. (*Id.* at 35-36.)  The conversation then continued:

> [Defendant]: Okay.  Well, if you don't want to say it, that's fine.
>
> [Plaintiff]: No.  I'm just sayin' – I'm gonna try – the anxiety now, is blocking – I'm blocking – but I may come up with it.
>
> [Defendant]: All right.
>
> [Plaintiff]: I think it ends in, may his will be –
>
> [Defendant]: Hmm?
>
> [Plaintiff]: I think the end of it is, may his will be done.
>
> [Defendant]:  No.  Grant me the wisdom to know the difference.  In other words, God grant me the serenity to accept the things that I cannot change–
>
> [Plaintiff]: Change the things I can.

9

[Defendant]: –the courage to change the things I can.  And the wisdom to know the difference.  So, really–whether you put God into that equation or not–as long as you can recite it.

[Plaintiff]: I'm not – I can't – . . . It's their – . . . – thing – . . . – but I don't – . . . That's part of what [inaudible – away from microphone] I don't say it, I say another prayer.

(*Id.* at 35-37.)  In his written decision, Defendant found that "Petitioner was somewhat familiar with the AA Steps, but had no idea what the 3-line Serenity Prayer was about.  He claimed it was not recited by Jews."  (Docket no. 42-2 at 3.)  Notably, though, as discussed more below, this finding is one of several related to Plaintiff's credibility.  Nothing in the hearing transcript or his written decision suggests that Defendant harbored any bias against Plaintiff with regard to his religion or for any other reason.  At most, in the absence of any other evidence supporting Plaintiff's contention that he attended A.A. meetings, Defendant asked Plaintiff if he could recite the words of a non-denominational prayer from the meetings that he allegedly attended.  When he could not, Defendant considered this as part of his overall credibility determination.

Moreover, Plaintiff cannot show that he was not afforded timely and adequate legal process.  Plaintiff's administrative hearing lasted nearly an hour.  Defendant gave Plaintiff ample opportunity to provide the clear and convincing evidence necessary to win his appeal.  In his decision, Defendant found that Plaintiff's testimony conflicted documentary evidence.  Specifically, Plaintiff testified that he last used Crack Cocaine in 1999, but he had Cocaine Possession convictions from 2005 and 2008.  (Docket no. 42-2 at 2.)  Additionally, Plaintiff had two DUI convictions in 2005, one of which occurred on April 19, 2005.  He testified, however, that both of these convictions resulted from use of prescribed Valium, even though one of his Cocaine convictions arose on April 19, 2005.  (*Id.* at 3.) Defendant also noted that while a substance-abuse evaluation gave Plaintiff an "excellent"

10

prognosis, it did so without considering Plaintiff's 2005 DUI and drug convictions or his 2008 drug conviction; moreover the evaluation itself was internally inconsistent. (*Id.*) And although Plaintiff provided a blood test as required, the test did not test for illicit drugs. (*Id.* at 4.) Thus, the ALJ had "major concerns" about Plaintiff's credibility, and he found that Plaintiff had failed to meet his burden on appeal. (*Id.* at 4.)

There is no evidence supporting any claim by Plaintiff that he was asked to change his religious view of violate his religious beliefs to win his appeal. To the contrary, there is a complete absence of any evidence to support Plaintiff's factual allegations regarding Defendant's alleged comments. Plaintiff's own allegations do nothing more than raise a metaphysical doubt. And to the extent that Plaintiff raises questions about procedural due process, the evidence provided by Defendant, even drawing all justifiable inference in favor of Plaintiff, contradicts Plaintiff's claims. Therefore, Defendant's Motion for Summary Judgment should be granted.

### 3.   Qualified Immunity

Defendant alleges that he is entitled to qualified immunity for Plaintiff's claims. (Docket no. 42 at 13-15.) Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. V. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Notably, qualified immunity is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted: "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Therefore, because the Court should grant Defendant's Motion for Summary Judgment on the merits, the undersigned will not address Defendant's assertion of qualified immunity.

### D.      Conclusion

For the above-stated reasons, the undersigned recommends that Defendant's Motion for Judgment on the Pleadings or for Summary Judgment (docket no. 42) be granted. Plaintiff's outstanding motions (docket nos. 29, 30, 35, and 37) and Defendant's Motion for Protective Order

(docket no. 36) should be denied as moot.  Therefore, this matter should be dismissed in its entirety.

## III.   Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 23, 2015                              s/ Mona K. Majzoub
                                                                  MONA K. MAJZOUB

UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Eric Schaefer and Counsel of Record on this date.


Dated: January 23, 2015                           s/ Lisa C. Bartlett_____
                                                  Case Manager

14